**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James A. IRWIN, Jr.,
Defendant-Appellant.**

**No. 78–1904.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 12, 1979.

Decided April 2, 1981.

Rehearing and Rehearing En Banc
Denied Aug. 17, 1981.

William Rapson, Denver, Colo. (Robinson, Waters & O'Dorisio, P. C. Denver, Colo., were on the brief), for defendant-appellant.

Kathryn H. Richman, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., was on the brief), for plaintiff-appellee.

Before HOLLOWAY and DOYLE, Circuit Judges, and BOHANON, District Judge.*

HOLLOWAY, Circuit Judge.

This is a direct appeal by the defendant-appellant James A. Irwin, Jr., from his conviction and sentence[1] on each count of an eight-count indictment charging him with conspiracy (Count 1) in violation of 18 U.S.C. § 371, the general conspiracy statute, with making a false statement to a United States agency (Count 2) in violation of 18 U.S.C. §§ 1001[2] and 2, with concealing or covering up material facts (Counts 3, 5, and 7) in violation of 18 U.S.C. §§ 1001 and 2, and with filing false claims with an agency of the United States (Counts 4, 6, and 8) in violation of 18 U.S.C. §§ 287 and 2.[3]

Defendant says that the essence of his appeal is that the Government failed to prove "materiality"—it failed to show how his acts might have affected in any significant way the decisions of the Government agency involved, the Economic Development Administration (EDA). Defendant argues that the trial court erred: (1) in denying a motion for judgment of acquittal, the evidence being insufficient to support the charges; (2) in submitting the issue of materiality to the jury; (3) in instructing the jury improperly on the issue of materiality; (4) in admitting evidence concerning the eligibility for reimbursement of certain expenses under a federal grant; (5) in failing to instruct the jury on the element of trick, scheme, or device for the nondisclosure counts under § 1001; and (6) in failing to dismiss the false claim counts under § 287 due to the Government's failure to set forth in the indictment the essential elements of materiality and specific intent.

We set aside the convictions on Counts 1, 3, 5, and 7 and affirm the convictions on Counts 2, 4, 6 and 8 for reasons that follow.

## I

### *The factual background*

Viewing all the evidence, together with all reasonable inferences therefrom in the light most favorable to the Government, as we must on this appeal from a guilty verdict, *United States v. Twilligear*, 460 F.2d 79, 80–81 (10th Cir.), the evidence tended to show the following facts.

---

* The Honorable Luther L. Bohanon, of the Western District of Oklahoma, sitting by designation.

1. Defendant was sentenced to concurrent terms of three years' imprisonment on each count. On the condition that the defendant would be confined "in a jail type institution" for a period of six months, the district court suspended the execution of the remaining 2½ years of his sentence and placed him on probation upon his release from confinement. (I.R. 45).

2. The pertinent portion of 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. 18 U.S.C. § 287 provides:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

In 1974 the city of Delta, Colorado, became interested in the development of an industrial park, a project which was being promoted by a local business group called the Delta County Development Co. In February 1974 the Delta city council hired Management Services Company (MSC), a trade name used by defendant, to provide assistance in obtaining federal and state funds to finance the project.[4] Defendant's compensation under this contract was to be based, in part, on a percentage of any Government grant or loan obtained for the city through his efforts.

After being informed by a United States Congressman that the percentage method of compensating defendant for his work was illegal, the city council entered into a second contract with defendant in June 1974. Under it, Delta was obligated to pay the defendant $150 per day for his efforts in attempting to secure federal or state funds for various projects in which Delta became involved. In addition, defendant was to be reimbursed for all reasonable costs related to the preparation of grant and loan applications and for all related travel and entertainment expenses.

Although defendant began to work for Delta under the first contract in February 1974 he apparently did not bill the city for his services and expenses until September 4, 1974. Between September 4, 1974 and April 1, 1975, Irwin submitted to Delta three separate bills which purportedly represented the services rendered and the expenses incurred under the two contracts between April 10, 1974, and March 28, 1975. These bills, which totaled approximately $21,000, were paid by Delta out of its own funds.

On October 18, 1974, defendant submitted on behalf of Delta a federal grant application to the Economic Development Administration (EDA) to secure funding for the city's industrial park project. Irwin admitted at trial that he prepared the EDA grant application with some minor help from other individuals and that he was responsible for reviewing the application for its accuracy and completeness. The evidence further indicates that when EDA officials who reviewed the application found it to be incomplete or unclear, it was defendant's responsibility to rectify the problems.

After several meetings with EDA officials in which defendant provided further documentation and clarification of the information contained in the application, EDA finally approved it and made an "offer of grant" on March 19, 1975 which the city of Delta accepted on March 28, 1975. Count 2 of the indictment concerns one page of the grant application which was approved and accepted by EDA.

In August 1974, a few months prior to the time that defendant submitted the grant application to EDA, he met with Robert J. Adams, an unindicted coconspirator, to discuss the engineering needs for Delta's industrial park project. Although Adams and his company, A&S Consultants (A&S), had performed engineering work for the city of Delta since 1967, he did not at the time of his meeting with Irwin have a contract with Delta to be the project engineer for the industrial park project.

During this meeting Adams orally agreed that if he became project engineer for Delta's industrial park project, he would pay Irwin for services primarily related to the preparation of the EDA grant application. Sometime subsequent to this initial meeting Adams became project engineer and agreed to pay Irwin $18,000 for the work he did pursuant to their oral agreement. At the time Irwin told Adams that any payments to Irwin would be eligible costs under the EDA grant.

After EDA had made its grant offer in March 1975, it was quite apparent that some of the services for which Irwin ex-

---

4. Defendant acknowledged at trial that the city council hired him as a grantsman. XI R.124. This job required him to research the various Government programs that might be available to the community, to determine if any funds from these programs might be available for a particular community project, and to do whatever needs to be done to obtain the Government funds. (X R.26).

pected payment from Adams were declared by EDA to be ineligible for payment with grant funds. Adams and Irwin still agreed, however, that Irwin would be paid $18,000 for his services despite the fact that some of those services were known to be ineligible for payment with grant funds. Adams testified that it was their intention that any payment to Irwin would be derived from the grant funds.

In May 1975, subsequent to EDA's approval of Delta's grant application, Irwin was appointed by the Delta city council to a salaried position as city manager. In this position Irwin became a central figure in the disbursement of funds for the industrial park project which was being financed in part by the EDA grant.

As city manager, Irwin was the city's receiving agent for bills and invoices that were submitted for work done on capital projects such as the industrial park. Although the city council had final authority to authorize payment on a bill, Irwin was responsible for the initial screening and review of the incoming bills. By his own testimony, Irwin had the authority to authorize payment on bills prior to the final approval by the city council.

Once the federal grant money became available for disbursement to Delta, Irwin and Adams would send to EDA a monthly itemized list of costs incurred by Delta on the industrial park project which were to be reimbursed under the EDA grant. Each monthly statement to EDA also contained a compilation of the bills received that month and the payments made by Delta. Each bill would be stamped "approved" and would bear the date and initials of both Irwin and Adams.

Between August 1975 and October 1975 Adams submitted to Irwin as Delta's city manager three separate bills on A&S stationery for professional services rendered on Delta's industrial park project. Each A&S bill contained a charge for services allegedly performed by Irwin, although there was no indication of this fact on the bill. These bills were approved by Irwin as

city manager and were paid by Delta. In at least one instance, Irwin authorized payment to A&S prior to the final approval of the city council. After each A&S bill was paid by Delta, it was then submitted in a monthly statement to EDA by Irwin and Adams for approval and reimbursement under the grant. These three bills became the basis for Counts 3–8.

Shortly after each payment to A&S by Delta, Adams would give Irwin a check for an amount which corresponded to a particular item on the bill paid by Delta. Defendant ultimately received approximately $18,000 from Adams. Further evidence will be detailed as necessary in discussing Irwin's appellate contentions, to which we now turn.

## II

### The Count 2 false statement charge

Count 2 charges that defendant violated 18 U.S.C. §§ 1001 and 2 by willfully and knowingly making or causing to be made a false statement as to material facts in the EDA grant application which he prepared and submitted on behalf of Delta.[5] The indictment specifically alleges that Irwin stated and represented in the EDA grant application that his company, MSC, had "received no compensation for services performed in connection with the application," when in fact he knew that MSC "had received compensation from the City of Delta for these services and expected to receive additional compensation from the City of Delta for these services." (I R.3–4.) Defendant contends that the evidence failed to show that a false statement was made or that it was material.

The essential elements which the Government must prove in a false statement prosecution under § 1001 are that (1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the statement was made knowingly and willfully; (4) the statement was within the jurisdiction of the

5. The district court submitted the Government's case to the jury under 18 U.S.C. § 2(b).

federal agency; and (5) the statement was material. *See United States v. Fitzgibbon*, 619 F.2d 874, 879 (10th Cir.); *see also United States v. Radetsky*, 535 F.2d 556, 571 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81; *Gonzales v. United States*, 286 F.2d 118, 120–21 (10th Cir.), *cert. denied*, 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190.

The page of the EDA grant application containing the alleged false statements requires the applicant to list *inter alia* the names of all persons "engaged by or on behalf of the applicant ... for the purpose of expediting applications made to ... [EDA] for financial assistance ...." In addition the applicant is required to state in separate columns the "total compensation" and the "compensation already paid" to each person listed. In the event that no one is employed for the purpose of expediting the application, then the applicant is required to indicate this fact by putting the word "none" on the form.[6]

Delta's grant application to EDA indicated that MSC had been hired as "planning and administrative consultants." Under the column marked "total compensation" a zero (0) was entered, while the column marked "compensation already paid" was left blank. At trial Irwin testified and explained that the application was prepared in different stages and that MSC had not received any payment from Delta for its services at the time this part of the application was completed. He admits, however, that by the time he submitted the grant application to EDA in October 1974, Delta had paid him in part for his work on the application and he expected further payment in the future. *See* Brief of Appellant at 5, 34. On this appeal he argues that he did indicate in the application that MSC was being paid for its services since he listed it as a grant expediter, that leaving the "compensation already paid" column blank is inconsistent with the alleged mis-

representation that MSC received no compensation from Delta for its services, and that the zero in the "total compensation" column concerns past compensation and only demonstrates his confusion since no listing is required where no compensation is to be paid.

█ We cannot agree that the evidence fails to show that a false statement was made in Delta's grant application to EDA. "Leaving a blank is equivalent to an answer of 'none' or a statement that there are no facts required to be reported." *United States v. McCarthy*, 422 F.2d 160, 162 (2d Cir.), *cert. dismissed*, 398 U.S. 946, 90 S.Ct. 1864, 26 L.Ed.2d 286. If there are facts that should be reported, leaving a blank belies the certification on the front page of the application that the information therein is "true and correct." *See also id.* at 162. The testimony and exhibits clearly show that Irwin submitted MSC's first bill to Delta on September 4, 1974 for $9,404.38 for services rendered between April and August of 1974; that Delta issued a check to MSC for this same amount on October 2, 1974; and that Irwin cashed this check on October 4, 1974—approximately 14 days before he submitted the grant application to EDA on October 18, 1974. We think the jury could find beyond a reasonable doubt that a false statement was made on the grant application concerning the amount of compensation paid by Delta to MSC for expediting the application and that Irwin knowingly and willfully made the false statement or caused it to be made.

Defendant's final contention with regard to Count 2 of the indictment deals with the materiality of the false statement. Not only does he challenge the evidence as being insufficient to show that the false statement was material, but he also claims that the trial court erred in submitting the issue of materiality to the jury and in instructing the jury as to this issue.[7]

6. This information was called for on the EDA application form, *see* Exhibit 20, which the agency was empowered to require under its authority to make regulations. *See* 42 U.S.C. § 3211(12); 13 C.F.R. § 309.22 (1980).

7. This argument is made with respect to each count of the indictment.

The record reflects that Irwin requested and submitted an instruction on the issue of materiality and that the district court gave the defendant's tendered instruction, changing only a few words of it. Defendant does not cite any portion of the record, nor can we find any instance, showing that he made a timely objection to the district court's submission of the materiality issue to the jury. Under these circumstances, defendant cannot claim as error that which he invited. *United States v. Riebold*, 557 F.2d 697, 708 (10th Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133; Rule 30, Fed.R.Crim.P.[8]

The district court instructed the jury, *inter alia*, that (XIII R.65):

> The making of a false statement or the concealment of the material fact to an agency of the United States Government is not an offense unless the statement made or fact concealed is material.

> A material statement or fact is one that has a natural tendency or is capable of inducing action by the agency, in this case the . . . [EDA].

Relying on *United States v. Radetsky, supra*, Irwin objected to this instruction, claiming that the word "payment" should be used in lieu of the word "action" because the latter word was too ambiguous and permitted the jury to base its decision on trivial agency actions. *See* XII R.156–57, 164. On this appeal Irwin argues that the proper test for materiality is whether the statement was capable of inducing "payment" or "of influencing a determination or decision required to be made." Consequently he argues that his conviction must be reversed because the district court's instruction permitted the jury to make a finding of materiality based on some "trivial bureaucratic response" to the statement in the grant application. (Brief of Appellant at 40–41).

In *Gonzales v. United States, supra*, 286 F.2d at 122, we held that the test for materiality is whether the falsification "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." *See also United States v. Radetsky, supra*, 535 F.2d at 572 n.17a (court found that a test using the word "action" was "parallel" to the test enunciated in *Gonzales*); *United States v. East*, 416 F.2d 351, 353 (9th Cir.) (test is "whether the falsification is calculated to induce action or reliance by an agency"). The form of an instruction is a matter committed to the discretion of the trial court and there is no requirement that the court adopt the exact language of a requested instruction, provided that the issues of the case are adequately covered. *United States v. Nolan*, 551 F.2d 266, 274–75 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191; *United States v. Hall*, 536 F.2d 313, 330 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285; *United States v. Newson*, 531 F.2d 979, 983 (10th Cir.). We are satisfied that the change was not in error and that it was not prejudicial to the defendant to use the word "action" in lieu of "payment."

We also must reject defendant's claim that the Government failed to prove the materiality of the false statement. Shirley Marshall, the senior civil engineer who reviewed Delta's application, testified in

---

8. Even if Irwin had raised a timely objection to the district court's action, under our past cases materiality is a factual question for submission to the jury with proper instructions. *See United States v. Radetsky, supra*, 535 F.2d at 571, 582–83 (Barrett, J., dissenting in part); *United States v. Weiss*, 431 F.2d 1402, 1406 & n.3 (10th Cir.); *Gonzales v. United States, supra*, 286 F.2d at 122.

Defendant argues that the majority rule is that materiality is a question of law for the court in prosecutions under § 1001, citing *United States v. Haynie*, 568 F.2d 1091 (5th Cir.); *United States v. Beer*, 518 F.2d 168 (5th Cir.); *United States v. Bernard*, 384 F.2d 915 (2d Cir.) and *United States v. Ivey*, 322 F.2d 523 (4th Cir.), *cert. denied*, 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313, and that the trial court erred here in submitting the issue to the jury. We are not persuaded that our procedure is wrong and remain convinced that materiality is a factual question to be submitted to the jury with proper instructions like other essential elements of the offense, unless the court rules, as a matter of law, that no submissible case is made out by the Government on the issue of materiality.

depth about the EDA review process for grant applications. Marshall was asked about the effect on EDA of an applicant's acknowledgment that someone had been paid a specific amount of money for expediting the grant application. He replied that an investigation would be conducted, that EDA would want to know who was involved and what was done to expedite the application, and that EDA would determine if any of the fees paid to the expediter were eligible for payment with grant funds. He testified that no investigation would be started if the grant applicant indicated on the application that no fees had been paid to an expediter and that EDA did not care if the grant applicant hired someone to expedite the application, so long as no grant funds were used to pay the expediter for his services. (IX R.105–08; *see also* XII R.82).

■ We think the evidence amply supports a jury finding that the false statement in Delta's grant application was material and had the capacity to influence EDA's decision to offer Delta financial assistance for its industrial park project. Consequently we uphold the conviction on Count 2.

### III

*The concealment or covering up charge of Counts 3, 5 and 7*

Counts 3, 5 and 7 charge that defendant violated 18 U.S.C. §§ 1001 and 2 by willfully and knowingly concealing and covering up material facts in a matter within the jurisdiction of EDA. Although each count relates to a specific item on separate A&S bills, each alleges that Irwin concealed the same material facts on the bills, to wit: (1) that MSC had received or would receive a payment from A&S for services performed on the industrial park project; (2) that MSC had already received payment from Delta for all or part of these services; and (3) that all or part of the money received by MSC from A&S was for services which EDA had previously declared ineligible for payment from Delta's federal assistance grant. Count 7 also charged Irwin with the concealment of a fourth material fact,

namely, that MSC did not perform any part of the revision of design on Crawford Avenue. These material facts were allegedly concealed by the trick of billing the sums paid by A&S to MSC on the letterhead bills of A&S as part of the fee for A&S's architectural and engineering services.

Irwin argues, *inter alia*, that the Government failed to prove that there was a duty to disclose in A&S's bills to Delta the facts allegedly concealed. Specifically he points to the lack of evidence showing that any statute, EDA regulation, or form required disclosure of the facts which he now stands convicted of concealing. The Government does not deny that in a § 1001 concealment prosecution it must prove that the defendant had a duty to disclose the information which is alleged to have been concealed. Instead it basically contends that § 1001 prosecutions are not limited to those statements which are required to be made by law or regulation and that the proof sufficiently shows that Irwin and A&S had a duty to disclose the concealed information.

■ We agree that § 1001 prosecutions are not limited to *statements* which are required to be made by law or regulation. *See, e. g., United States v. Fitzgibbon, supra,* 619 F.2d at 878. We think, however, that the Government's argument misses the point since we are dealing not with a false statement, but rather with the concealment or nondisclosure of material facts. *See generally United States v. Diogo,* 320 F.2d 898, 902 (2d Cir.) (proof needed for concealment prosecution differs significantly from the proof needed for a false statement prosecution). We believe that it was incumbent on the Government to prove that the defendant had the duty to disclose the material facts at the time he was alleged to have concealed them. *See, e. g., United States v. Muntain,* 610 F.2d 964, 971–72 (D.C.Cir.) (HUD form specifically required disclosure of concealed information); *United States v. Ivey, supra,* 322 F.2d at 524–26 (agency regulation required disclosure of concealed information); *see also United States v. Phillips,* 600 F.2d 535, 536–37 (5th Cir.).

And, of course, there can be no criminal conviction for failure to disclose when no duty to disclose is demonstrated. *Cf. Chiarella v. United States,* 445 U.S. 222, 227–28, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348. Further support for this position is found in the district court's instructions to the jury.[9]

We are persuaded that it must be established by the Government that the law required disclosure of the information at the time the defendant allegedly concealed it to sustain such charges. The Government was required to show that there ·was a legal duty to disclose to EDA the material facts which were allegedly concealed when Irwin caused the payments to him to be billed on the letterhead bills of A&S as part of the fee for A&S's architectural and engineering services on Delta's industrial park project.

The Government attempted to show through the testimony of Shirley Marshall that A&S, as project engineer, was obligated to disclose in its billings to Delta that Irwin and MSC received or would receive a payment from A&S for services performed on the industrial park project. Marshall testified that project engineers frequently subcontract work out to others and that the subcontractors are required to submit invoices for the work performed to enable EDA to review the work and to approve it for reimbursement under the grant. He further indicated that it was customary for the project engineer to disclose in its bills to the grant recipient the names of the subcontractors and the work performed by them.

On cross-examination, however, Marshall admitted that the project engineer does not have to indicate on its bills to the grant recipient the names of every employee or subcontractor who does work on the project. The defense also introduced the testimony of Fred Van Remortel, an ex-EDA official who had been a regional director for the agency. (XII R.51–54). Van Remortel testified that there was nothing wrong with the project engineer subcontracting work out to others and that he was not aware of any EDA regulation or law which required the project engineer to include in its bills the names and time of the subcontractors doing work for it. He further indicated that he was not aware of any law or regulation requiring an individual to disclose or report to the EDA that he is acting both as a grant expediter and as a subcontractor on the same project. There was no contradiction of this testimony of Mr. Van Remortel and we are referred to no such statutes or regulations by the Government.

■ We must agree that it was not shown that there was a legal duty to disclose in A&S's bills to Delta the payments made by A&S to MSC or the other matters involved. Consequently the convictions on Counts 3, 5 and 7 cannot stand.

## IV

### *The Count 1 conspiracy charge*

Count 1 charged defendant with a violation of 18 U.S.C. § 371. More specifically, Count 1 charged that between September 1974 and September 1976 Irwin and Adams conspired: (1) to defraud the United States by depriving it of its money and property, by deceiving EDA officials assigned to administer the grant, and "by circumventing, defeating, evading, and frustrating safeguards and processes established by . . . [EDA] for the proper award and sound ad-

---

**9.** The charge stated in part (XIII R.66–68):

An act is done willfully if done voluntarily and intentionally and *with specific intent to do something the law forbids*; that is to say with bad purpose, either to disobey or to disregard the law.

   \*     \*     \*     \*     \*     \*

To cause another person to commit a criminal act, it is necessary that the accused willfully do something which . . . results in the other persons either doing something the law forbids or *failing to do something which the law requires to be done.*

Once again, an act, or a failure to act, is willfully done if done voluntarily and intentionally and with specific intent to do something which the law forbids, *or with specific intent to fail to do something which the law requires to be done*; that is to say, again, with bad purpose either to disobey or to disregard the law. (Emphasis added).

ministration of federal grants"; and (2) to commit offenses against the United States, namely 18 U.S.C. § 1001, by using a trick, scheme, and device to falsify, conceal, and cover up material facts in matters within the jurisdiction of EDA.

Irwin argues, *inter alia*, that the conspiracy conviction on Count 1 must be set aside because materiality of nondisclosure alleged in Counts 3, 5 and 7 was not proved, and that those nondisclosures offenses may have been used by the jury to reach the conspiracy verdict by finding defendant guilty under the second part of the charge—conspiracy "to commit offenses against the United States...." He says that his argument on lack of proof of materiality on the § 1001 counts (Counts 3, 5 and 7) thus requires reversal of the conspiracy conviction; that materiality with respect to these nondisclosure counts was not shown because the Government failed to demonstrate that there was a duty to disclose the specified facts, and how nondisclosure could affect EDA decisions; and that since it cannot be determined whether the jury may have based the conspiracy conviction on the theory of conspiracy to commit these unproven § 1001 offenses, the conspiracy conviction must be set aside, citing *United States v. Radetsky, supra*, 535 F.2d at 573. (Brief of Appellant at 21–22, 24, 37).

We note that defendant did make these objections by a motion for judgment of acquittal in the trial court, which were also tied in with objections to the instructions. (XII R.155–56, 158). The argument was made, *inter alia*, that there had been no proof by way of regulation, statute, or contract of any duty to disclose the matters alleged not to have been disclosed in Counts 3, 5 and 7. (*Id.* at 159–60).

For reasons given in Part III, *supra*, we must set aside the convictions on Counts 3, 5 and 7. The Government did not establish a duty to disclose on the A&S bills the details such as that MSC had received or would receive a payment from A&S for services performed on the industrial park project, etc. Since the Government did not demonstrate a duty to disclose those mat-

ters, there could be no criminal violation of § 1001 for such nondisclosures alleged in Counts 3, 5 and 7. Likewise, in view of the objections made pointing to the fact that those charges failed as a matter of law, and that it cannot be determined whether the jury based its conspiracy verdict on a conspiracy to commit those very offenses, the conspiracy conviction cannot stand. *See United States v. Radetsky, supra*, 535 F.2d at 573; *United States v. Kavazanjian*, 623 F.2d 730, 739 (1st Cir.); *United States v. Carman*, 577 F.2d 556, 566–68 (9th Cir.); *United States v. Tarnopol*, 561 F.2d 466, 475 (3d Cir.); *United States v. Dansker*, 537 F.2d 40, 51 (3d Cir.); *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748; *Van Liew v. United States*, 321 F.2d 664, 672 (5th Cir.); *cf. Leary v. United States*, 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57; *Stromberg v. California*, 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117; *but see United States v. Dixon*, 536 F.2d 1388, 1401–02 (2d Cir.); *Moss v. United States*, 132 F.2d 875, 878 (6th Cir.).

Accordingly, the conviction on Count 1 is set aside.

## V

### *The false claim charges of Counts 4, 6 and 8*

Counts 4, 6, and 8 charge that defendant violated 18 U.S.C. §§ 287 and 2 by presenting or causing to be presented to EDA for payment three claims for engineering services performed by A&S in connection with Delta's industrial park project, knowing the claims to be "false, fictitious, and fraudulent in that a substantial part of the work so claimed did not consist of engineering services performed by A&S...." Each count is based on one of three bills that were submitted by A&S to Delta for services performed on the industrial park project.

Irwin argues that each false claim count should have been dismissed by the district court because the indictment failed to set forth the essential elements of specific intent and materiality. Alternatively he

claims that his motion for judgment of acquittal should have been granted because the evidence failed to show "how the claims were false, fictitious, or fraudulent and how EDA payment decisions could be potentially affected by the same." (Brief of Appellant at 28–33; 45–46).

### A. *Sufficiency of the indictment*

Defendant argues that the greater weight of authority supports the position that § 287 is a specific intent crime requiring an allegation and proof that the defendant acted intentionally or willfully in submitting the false claim to the Government.[10] He relies on cases requiring a finding of specific intent before liability can attach under the civil False Claim Act, 31 U.S.C. § 231. Defendant acknowledges that the district court did instruct the jury that the Government had to prove beyond a reasonable doubt that he acted knowingly and willfully. Nevertheless he argues that an oral instruction cannot cure a defective indictment, particularly where it is given to the jury for use in its deliberations. (Brief of Appellant at 45–46; Reply Brief of Appellant at 11–12).

With respect to materiality, defendant admits that "§ 287 does not expressly set forth materiality as an essential element" and that "no cases could be found which require such construction." He argues, however, that "this court should read into § 287 a materiality requirement" as was "done judicially with respect to the second clause of § 1001." This judicial requirement is necessary, he says, to insure the reasonable application of § 287 and to exclude trivial falsehoods from its purview.[11] (Brief of Appellant at 28–33).

The Government responds that "willfulness" and "materiality" are not elements of a § 287 crime and that consequently there was no need to specifically allege these facts in the indictment. Support for this position is found the Government says, in the fact that Congress specifically included the elements of willfulness and materiality in the statutory language of § 1001 while omitting the terms from the language of § 287 and from the Congressionally approved Form 10, Fed.R.Crim.P. (Brief of Appellee at 22–23).

It is fundamental that an indictment must contain the elements of the offense charged, that it fairly inform the defendant of the charge against which he must defend, and that it enable him to plead an acquittal or conviction in bar of future prosecution for the same offense. *See, Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590; *United States v. Radetsky, supra*, 535 F.2d at 562; Rule 7(c), Fed.R.Crim.P. It is generally sufficient that an indictment set forth the offense in the words of the statute, as long as those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense. *Hamling, supra*, 418 U.S. at 117, 94 S.Ct. at 2907; *Mims v. United States*, 332 F.2d 944, 946 (10th Cir.), *cert. denied*, 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92. We think that the indictment in this case, which essentially follows the language of § 287, meets this requirement.

It is true, as defendant points out, that 18 U.S.C. §§ 287 and 1001 were originally part of the same statute and that § 1001 expressly requires willfulness. *See generally United States v. Bramblett*, 348 U.S. 503, 504–09, 75 S.Ct. 504, 505–08, 99 L.Ed. 594. However, like the Fifth Circuit in *United States v. Cook*, 586 F.2d 572, 575 (5th Cir.), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274, we are persuaded that the inclusion of the term "willfully" in § 1001 and the omission of the term in § 287 suggests a Congressional intent to exclude this state of mind from the essential elements of the latter offense. This construction is for-

---

10. *Prior to trial defendant moved to dismiss Counts 4, 6, and 8 due to the failure of the indictment to set forth "a willfulness element." I R.15. In his motion for a judgment of acquittal, Irwin again argued inter alia that the § 287 counts should be dismissed since they failed to* set forth the necessary elements of specific intent and materiality. (XII R.162).

11. The district court did not instruct the jury that materiality was one of the elements which the government needed to prove in a § 287 prosecution. *See* XIII R.64–65.

tified by the fact that Congressionally approved Form 10, Fed.R.Crim.P., designed for § 287 indictments, omits willfulness as an element of the offense. Although the forms are merely illustrative, see Rule 58, Fed.R.Crim.P., we think that Form 10 is "strong evidence of what the criminal law requires." *Honea v. United States*, 344 F.2d 798, 804 (5th Cir.); *see also Myles v. United States*, 170 F.2d 443, 445 (5th Cir.).[12] Accordingly we hold that willfulness is not an essential element of 18 U.S.C. § 287 and that the indictment is not insufficient merely because it fails to allege that the defendant acted willfully. *United States v. Cook, supra*, 586 F.2d at 575; *see also United States v. Precision Medical Lab., Inc.*, 593 F.2d 434, 444 (2d Cir.); *but see United States v. Milton*, 602 F.2d 231, 233–34 & nn. 6 & 9 (9th Cir.) (approving jury instruction on willfulness in § 287 prosecution); *United States v. Maher*, 582 F.2d 842, 845–48 (4th Cir.) (approving jury instruction); *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73; *Johnson v. United States*, 410 F.2d 38, 47 (8th Cir.), *cert. denied*, 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72.[13]

■ For similar reasons we do not read into § 287 a materiality requirement as we did with respect to the second clause of § 1001 in *Gonzales v. United States, supra*, 286 F.2d at 120–21. There is no indication in either the statutory language of § 287 or its legislative history that Congress intended materiality to be an essential element of a § 287 offense. Admittedly there are cases

indicating that materiality is an essential element of § 287. *See, e. g., United States v. Adler*, 623 F.2d 1287, 1291 n. 5 (8th Cir.); *United States v. Snider*, 502 F.2d 645, 652 n. 12 (4th Cir.); *United States v. Johnson*, 284 F.Supp. 273, 283 (W.D.Mo.), *aff'd*, 410 F.2d 38, 46–47 (8th Cir.), *cert. denied*, 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72; *see also United States v. Haynie*, 568 F.2d 1091, 1092 (5th Cir.) (per curiam). These cases, however, do not consider the effect of Form 10, Fed.R.Crim.P., on the question. We think that Form 10 is persuasive that an indictment in such form is sufficient. Consequently we hold that materiality is not an essential element of § 287 and need not be alleged in an indictment charging a violation of that statute. Therefore the district court did not err when it refused to dismiss Counts 4, 6 and 8 on this ground.

## B. *Sufficiency of the evidence*

Defendant also argues that the Government failed to establish that the claims were false, fictitious, or fraudulent.[14] It appears that defendant not only challenges the sufficiency of the evidence on this point but also claims there is a variance between the allegations in the indictment and the evidence presented at trial.

Defendant correctly points out that the indictment specifically alleges that the claims submitted by A&S were false, fictitious, and fraudulent because "a substantial part of the work so claimed did not consist of engineering services performed by A&S."

---

12. *See also United States v. Cook, supra*, 586 F.2d at 575; *United States v. Anderson*, 447 F.2d 833, 836 (8th Cir.), *cert. denied*, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788; *Clark v. United States*, 400 F.2d 83, 85 (9th Cir.), *cert. denied*, 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581; *United States v. Bagdasian*, 291 F.2d 163, 165 (4th Cir.) *cert. denied*, 368 U.S. 834, 82 S.Ct. 60, 7 L.Ed.2d 36; *Martin v. United States*, 285 F.2d 150, 151 (10th Cir.), *cert. denied*, 365 U.S. 853, 81 S.Ct. 818, 5 L.Ed.2d 816; *Gadsden v. United States*, 223 F.2d 627, 632 (D.C.Cir.); *Donnelly v. United States*, 185 F.2d 559, 560 (10th Cir.), *cert. denied*, 340 U.S. 949, 71 S.Ct. 528, 95 L.Ed. 684; *Carter v. United States*, 173 F.2d 684, 685 (10th Cir.), *cert. denied*, 337 U.S. 946, 69 S.Ct. 1503, 93 L.Ed. 1749; *Ochoa v. United States*, 167 F.2d 341, 345 (9th Cir.); *United States v. Bishop*, 38 F.R.D. 317, 319 (D.Mont.); 3 Wright, Federal Practice & Proce-

dure § 911 (1969); *but see United States v. Larson*, 125 F.Supp. 360, 361, 15 Alaska 256.

13. We note that *Hammert v. United States*, 14 F.2d 827, 828 (8th Cir.), did quote allegations that defendant "knowingly, willfully . . ." etc., presented a false, fictitious and fraudulent claim and held the indictment sufficient, saying it was practically in the language of the statute. However, the necessity of the element of willfulness was not further developed and we do not view the case as holding willfulness to be a required element of the offense.

14. Defendant also claims that the government failed to prove how the alleged false aspect of the claims affected EDA payment decisions. Because we have already held that materiality is not an element of a § 287 offense, we need not consider this argument.

He admitted at trial that the services listed on A&S's bills to Delta were not performed entirely by A&S. He says, however, that this fact does not make A&S's bills false, fictitious, or fraudulent because the evidence clearly establishes that the project engineer (A&S) commonly hires other individuals to do parts of the project work and then bills the grant recipient (Delta) for these services without revealing this fact on the bills. He argues that his convictions on the false claim counts must be reversed since there is no proof that A&S's claims are false, fictitious, or fraudulent when they fail to identify specifically the work performed by subcontractors. (Brief of Appellant at 28–30; Reply Brief of Appellant at 6).

The Government contends that the evidence is sufficient to prove each element of the crimes charged. It argues that the three A&S bills presented to EDA by Delta as part of claims for reimbursement under the EDA grant were false, fictitious, and fraudulent "because they purportedly represented the amount due for work performed entirely by . . . A&S" when in fact some of the work had been performed by MSC or had not been performed at all. (Brief of Appellee at 7, 13–14).

Section 287 prohibits making or presenting a claim to any United States agency, knowing that it is "false, fictitious, or fraudulent." The disjunctive term "or" clearly indicates that making any one of the three types of proscribed claims would subject the claimant to criminal liability. *See United States v. Milton, supra,* 602 F.2d at 233 n.5; *United States v. Maher, supra,* 582 F.2d at 847; *cf. Fleming v. United States,* 336 F.2d 475, 479 (10th Cir.), *cert. denied,* 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795. Thus a claim need not be fraudulent so long as it is false or fictitious.[15]

■ We must agree with the defendant that the proof is insufficient to establish that A&S's bills were false, fictitious, or

fraudulent because of the failure to itemize and identify on the bills the work performed by subcontractors. However, we conclude that there was evidence tending to show that the claims submitted by Irwin to A&S, and subsequently submitted by A&S to Delta and EDA, were false because they purportedly represented the amount due for work which in fact had not been performed by or on behalf of A&S. Consequently we hold that the district court did not err when it denied Irwin's motion for judgment of acquittal on the false claim counts.

■ Although not specifically stated Irwin appears to argue, as he did at trial, that the convictions on the false claim counts cannot be upheld since the evidence does not show that the claims were false, fictitious, or fraudulent in the manner alleged in the indictment. (Brief of Appellant at 28–30). As noted above, we have held that the evidence sufficiently establishes that the claims were false because A&S billed for services which were not performed. Admittedly the indictment does not specifically allege that the claims were false in this manner. Nevertheless we think that if any variance exists between the evidence and the allegations in the indictment, it clearly has not affected defendant's substantial rights.

We have consistently held that a variance between the indictment and the proof is fatal only if the defendant could not have anticipated from the allegations in the indictment what the evidence would be at trial or if a conviction based on the indictment would not bar a subsequent prosecution for the same offense. *See, e. g., United States v. Freeman,* 514 F.2d 1184, 1189 (10th Cir.). There is no showing in this record that either of these circumstances exists. Consequently any variance that may exist between the indictment and the proof is not prejudicial to the defendant and therefore may be disregarded. Rule 52(a), Fed.R.Crim.P.

---

15. A claim is false or fictitious within the meaning of § 287 "if untrue when made, and then known to be untrue by the person making it or causing it to be made." A claim is fraudulent "if known to be untrue, and made or caused to be made with the intent to deceive

the Government agency to whom submitted. *"United States v. Milton, supra,* 602 F.2d at 233 & n.6 quoting 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 28.04 (3d ed. 1977).

## VI

### Conclusion

We have examined defendant's remaining contentions, and find they are without merit and require no further discussion. Accordingly, the convictions and sentences on Counts 2, 4, 6, and 8 are affirmed; the convictions and sentences on Counts 1, 3, 5 and 7 are set aside. The cause is remanded for dismissal of Counts 3, 5, and 7 and for a new trial on Count 1.[16]

### ORDER ON REHEARING

On consideration of Defendant-appellant's petition for rehearing with suggestion for rehearing en banc and the Government's response, the panel, Judges Holloway, Doyle and Bohanon, concludes as follows:

Defendant-appellant Irwin's petition for rehearing and rehearing en banc argues that (1) the jury could have convicted defendant on the basis of evidence ruled by this court to be insufficient as a matter of law, thus attacking the affirmance of the false claims convictions on counts 4, 6 and 8; and (2) the opinion appears to be predicated on a theory as to those counts which was not tried or submitted to the jury.

■ It is true that the opinion concluded, p. 683, that the proof was insufficient to show that A & S's bills were false, fictitious or fraudulent because of failure to identify on the bills the work performed by subcontractors. Moreover, the indictment was furnished to the jury with the general allegations concerning false claim counts 4, 6 and 8 that the claims were "false, fictitious and fraudulent in that a substantial

part of the work so claimed did not consist of engineering services performed by A & S Consultants, Inc." (I R. 5, 6 and 7–8). Nevertheless, as the opinion stated, p. 683, there was evidence tending to show that the claims submitted by defendant Irwin to A & S, and subsequently submitted by A & S to Delta and the EDA, were false because they purportedly represented the amount due for work not in fact performed by or on behalf of A & S. This theory of the Government that such services were not performed at all or were exaggerated was argued and tried. We must disagree, therefore, with defendant's contention that "[e]ven if a jury could reasonably conclude that services billed had not been performed at all, there was virtually never any government allegation to that effect in the indictment, in pretrial hearings, in the instructions, or in the government's opening statement." (Petition for Rehearing, p. 4).

Instead, we note that during the pre-trial hearing on various defense motions the trial court asked the Assistant United States Attorney to explain the Government's theory behind the false claim counts. (II R. 16). After some discussion on other points the trial court had the following colloquy with the Assistant United States Attorney (II R. 19–20):

The Court: The Government didn't get the benefit. That's what you are saying?

Mr. Nottingham: That's right.

The Court: The Government's beneficiaries didn't get the benefit?

Mr. Nottingham: That's right.

The Court: So, it is as if materials were ordered, billed for and never supplied?

Mr. Nottingham: That's our position, your Honor, and I don't know how I could

16. At the retrial, the Government can retry the first theory of conspiracy, namely, conspiracy "(1) to defraud the United States . . ." by the various means alleged. It may not, for double jeopardy reasons, retry conspiracy theory "(2) to commit offenses against the United States" as alleged in the indictment, on which theory the Government failed at the first trial. *United States v. Kavazanjian*, 623 F.2d 730, 739 n.20 (1st Cir.); *Government of Virgin Islands v. Richards*, 618 F.2d 242, 244–45 (3d Cir.).

We are mindful that retrial of the first theory alleged in the conspiracy count will involve

trial of the charge of conspiracy to circumvent, defeat, etc., safeguards and processes of the EDA and that the defendant argues that such a charge does not constitute a conspiracy offense. We disagree. 18 U.S.C. § 371 reaches "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973, quoting *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569.

have made it anymore clear [sic] or any clearer . . . .

Similarly, the same Assistant United States Attorney told the jury in his opening statement that he intended to prove, among other things, that the number of hours which A & S billed to Delta for engineering work performed on the industrial part project "were exaggerated all out of proportion," were "padded," and were "inflated." (IV R. 20–21, 24, 36, 43). He further indicated that some of the services which defendant had supposedly performed had not in fact been done. (*Id.* at 26, 43). In his closing argument to the jury the Assistant United States Attorney again argued that the evidence showed the work supposedly performed by Irwin on the project which was billed to Delta through A & S was "exaggerated" or "wasn't done." (XIII R. 16, 36).

Defense counsel also recognized that the Government had attempted to prove during the trial that A & S's bills to Delta were false because they contained claims for services which had not been performed. This was admitted during argument on the mid-trial and post-trial motions for judgment of acquittal. (*See* IX R. 162–64; XV R. 7–8, 29–30). During the hearing on the post-trial motion for judgment of acquittal, the district court noted: "Of course, it's an issue as to whether there were any services . . . . If you construe the evidence in the light favorable to the Government, there weren't any services." (XV R. 7).

Thus we are satisfied that there was notice of and evidence submitted on the theory that the services were not performed at all or were exaggerated. This manner of proof was not so out of the bounds of the allegations of the indictment as to be impermissible, nor was it a prejudicial variance. We are therefore also convinced that this case does not come within the rule of *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743, so that reversal under it is required, as defendant argues.

■ What we have said also disposes of defendant's further argument under point (1) above. This contention is that since one theory on the false claim counts has been held insufficient as a matter of law, and since it is impossible to determine if the jury relied on that theory, the convictions cannot stand. We feel it unrealistic to predicate this argument on the assumption that the jury relied on the unsupported theory that the A & S bills were false because they failed to itemize and identify the work performed by subcontractors. As spelled out above, the Government argued the position which the evidence did support—that the work was not performed at all or was exaggerated—along with the other theory which was not supported by the proof. (XIII R. 35–37).

Accordingly, the panel concludes that the petition for rehearing should be overruled.

The petition for rehearing having been denied by the panel to whom the case was argued and submitted, and no member of the panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing en banc is denied.