UNITED STATES of America, Appellee,

v.

William F. BIGGS, Appellant.

UNITED STATES of America, Appellee,

v.

William F. BIGGS, Appellant.

UNITED STATES of America, Appellant,

v.

William F. BIGGS, Appellee.

Nos. 82–5236(L), 82–5237 and 82–5256.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1985.

Decided May 9, 1985.

Marye L. Wright, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Charleston, W.Va., on brief), for appellant.

Robert L. Jennings, Gainesville, Fla. (Grafton B. Wilson, II; Schwartz & Wilson, Gainesville, Fla., on brief), for appellee.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and MERHIGE, United States District Judge for the Eastern District of Virginia, sitting by designation.

HARRISON L. WINTER, Chief Judge:

A jury found defendant William F. Biggs guilty of "travel fraud" under 18 U.S.C. § 2314. The "travel fraud" statute proscribes inducing another to travel in interstate commerce in furtherance of a scheme to defraud him of money or property having a value of $5,000 or more.[1] The fraudulent scheme alleged here was that Biggs solicited investments to open a coal mine, but in fact appropriated the majority of the funds collected for his own personal use. The four counts of the indictment alleged interstate travel by various Florida residents.

After Biggs was found guilty he moved for judgments of acquittal. The district court granted Biggs' motion on three of the four counts (1, 2, and 4), ruling that the evidence on these counts was insufficient to sustain guilty verdicts. The district court denied the motion as to count 3.

Both Biggs and the government appeal.[2] Because we conclude that the evidence of

---

1. The statute provides in pertinent part:

    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more ...
    Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. In fact Biggs has taken two appeals—Nos. 82–5236 and 82–5237. In No. 82–5236, which arose under another indictment, the government has filed a notice of dismissal of that indictment. The appeal is thus moot. We will not consider

guilt on count 3 was legally sufficient to convict, and we see no reversible errors in the trial, we uphold that conviction. Because we think that the district court misapprehended applicable law, we reverse the judgments of acquittal on counts 1, 2 and 4 as improvidently granted.

I.

In ruling on Biggs' motion for judgments of acquittal, the district court recited the facts of this case in a detailed memorandum order. We draw freely from its summary, which describes the alleged scheme and the involvement of the victims named in the indictment.

Biggs obtained a lease to a coal property, known as the Hickman mine, in Dille, West Virginia. He then met an accountant named Jean Bass Loudin and enlisted her services in raising money to open and operate the mine.[3] He told her that he had raised $125,000 from other investors and had invested $150,000 himself; in fact, he had procured only $25,000 from one other investor. He represented that at least 3,000,000 tons of coal were available in the mine; in fact, there was evidence that the property had been practically mined out. Loudin, supplementing what Biggs had told her with some misrepresentations of her own, recruited most of the Florida residents who ultimately invested in the venture.

Sibbeth and Ruth Harper were the victims named in the first count of the indictment. Recruited by Loudin, they came to West Virginia where they were met by Biggs. He took them to the mine, told them that a solid six-foot seam of coal existed which would be mined, and predicted that the mine would be open within 90 days. The Harpers invested $15,000 on this visit, another $21,000 on June 23, 1977, and ultimately the aggregate sum of $45,-000.

Talbert was the victim named in count 2. Biggs met Talbert in Florida on June 23,

1977, after Talbert had already invested $2,000 at the instance of Loudin. Biggs solicited another investment of $5,000, representing that the money would be used to open the mine. Talbert, at Biggs' invitation, visited the mine in August of 1977 and twice thereafter. He ultimately invested $22,000 in the venture.

Dedge, named in count 3, flew from Florida to West Virginia to see the mine. Biggs met him at a local restaurant and told him that Biggs owned contracts for coal from foreign countries and that everyone would be rich. Biggs falsely told Dedge that the mining at the site would begin within 2–4 weeks, and that the necessary equipment was within 48 hours reach. Dedge invested $5,000.

Mynatt, named in count 4, invested $9,000 in the mine based on Loudin's representations. He then went to West Virginia to see the mine. There Mynatt was told, in the presence of Biggs, that the coal was abundant, that leases on surrounding land would be sought, and that the coal at the site had already been sold to Brazil.

Between June and September, 1977, approximately $150,000 was received from investors, but only $1,420 was spent at or near the mine site. No core drilling had taken place to determine the existence of economically recoverable coal, and only $2,000 was spent for maps and other engineering services with respect to the mine.

In October, 1977, Biggs met with the Harpers, Dedge and Talbert in Florida. He represented that he needed another $35,000 to open the mine and start production, $12,-000 of which was for the bond to accompany the West Virginia mining permit. These investors raised the additional sum of $37,000, and Talbert required that $12,-000 of the money he advanced be earmarked to secure the bond. As the district court concluded, the representation that the mine could be opened for $35,000 was "patently false." A state permit was final-

---

any issue that it sought to raise, and we will dismiss the appeal.

**3.** Loudin testified for the government at Biggs' trial pursuant to a plea bargain.

ly issued in January, 1978, but the federal permit was never obtained.

As the district court correctly concluded, "[t]here was ample evidence in this case from which the jury could properly find beyond a reasonable doubt that the defendant had, during the period from late spring 1977 until the fall of 1977, devised a scheme to defraud Florida investors of money by false representations regarding the development and operation of a coal mine at Dille, West Virginia." Further, as the district court found, the jury could find beyond a reasonable doubt that of the $187,000 Biggs raised for this venture, he pocketed for his personal use "as much as $100,000 ... over and above his own expenses for travel, lodging and meals in connection with this project."

## II.

■ In assaying the legal sufficiency of the evidence to support the conviction on count 3, the district court concluded that Biggs made false and fraudulent representations to Dedge when he persuaded him to invest $5,000 and to travel in interstate commerce. The district court noted that the representation about the availability of equipment was false, that no steps to obtain mining permits had been undertaken, and that the permits could not "in reality" have been obtained within the time that Biggs represented that mining could begin. We agree that the evidence was sufficient to sustain a conviction on count 3, though for reasons going beyond the misrepresentations made directly to Dedge.

In dealing with the convictions on counts 1, 2 and 4 (the Harpers, Mynett and Talbert), the district court looked to the evidence of "key misrepresentations which may have been made to the investors in each of these three counts." It ruled that the representation to Sibbeth Harper that the mine had been "engineered" was used "in such a vague context" that it would not support a guilty verdict, and that Biggs had obtained an estimate of available tonnage as early as April or May 1977. It ruled that the statements made to Mynatt

may not have been heard by Biggs and that Biggs' involvement was "too tenuous" to sustain a conviction. Finally, the district court ruled that no false representations had been made by Biggs directly to Talbert and that therefore the conviction on count 4 had to be set aside.

■ We think the district court erred in granting judgments of acquittal because of a supposed lack of proof that Biggs made misrepresentations directly to the Harpers, Mynett and Talbert. A conviction under 18 U.S.C. § 2314 requires proof beyond a reasonable doubt of two elements: (1) that defendant devised a scheme intending to defraud a victim of money or property of a minimum value of $5,000 and (2) that as a result of this scheme, a victim was induced to travel in interstate commerce. *United States v. Hassel*, 341 F.2d 427 (4 Cir.1965); *United States v. Gibson*, 690 F.2d 697 (9 Cir.1982), *cert. denied*, 460 U.S. 1046, 103 S.Ct. 1446, 75 L.Ed.2d 801 (1983); *United States v. Benson*, 548 F.2d 42 (2 Cir.), *cert. denied*, 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977); *United States v. Reina*, 446 F.2d 16 (9 Cir.1971).

■ We said in *Hassel* that "it is not necessary to prove an actual defrauding but it is enough to prove a scheme intending to defraud." 341 F.2d at 430. Proof of personal contact between a defendant and the victim of travel fraud is not necessary for conviction. *United States v. Mangiameli*, 668 F.2d 1172 (10 Cir.1982). It follows that proof of a specific representation to each of the victims named in each of these counts was not a necessary element of the government's case, and Biggs' convictions under counts 1, 2 and 4 should not have been set aside for lack of such proof. Rather, the convictions should be sustained if the elements we identified in *Hassel* were proven beyond a reasonable doubt.

■ We conclude that the proof permitted the jury to find that the *Hassel* elements were proven. As we have said, there was ample proof of a scheme to defraud. Similarly, the proof was sufficient to permit the finding that Biggs caused the

victims to travel in interstate commerce. We reject the argument that they travelled to West Virginia only as a result of Loudin's misleading solicitations, and that this was an independent scheme to defraud, breaking the chain of Biggs' criminal liability. Loudin testified that Biggs lied to her about his financial backing and the mine's prospects. As a result she "really believed in the deal" and was willing to solicit investors for Biggs. Biggs actively cooperated with the referral process by meeting the gullible Floridians and showing them the mine. Without Biggs there would have been neither a mine scam nor a need for referrals. We therefore conclude that Biggs was the "motivating force" in getting investors to come from Florida to West Virginia. *United States v. Kelly,* 569 F.2d 928, 935 (5 Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978).

### III.

Having concluded that the evidence was legally sufficient to convict Biggs on all counts, we turn to his claims of reversible error in the conduct of his trial. We find none of them convincing.

### A. Jury Instructions

■ Biggs contends that the following charge was reversible error:

Intent to defraud may also be established by proof beyond a reasonable doubt that the accused deliberately acted with reckless disregard as to whether a material, untrue representation was true or false and with a conscious purpose to avoid learning and disclosing the truth and with specific intent to deceive.

Section 2314 requires proof of specific intent to defraud, Biggs argues; recklessness is an insufficient *mens rea.* Recklessness alone may well be insufficient, but this charge is nevertheless proper. The charge does not instruct the jury it may convict upon proof of recklessness. Rather the charge properly instructs that the specific intent to defraud may be inferred from proof that defendant deliberately avoided learning and disclosing the truth of a matter.

■ Biggs complains also that his requested instruction about reliance on advice of counsel was not given. While the district court advised defense counsel that it would give the instruction, the instruction was left out of the jury charge. The court did give an instruction about good faith as a defense, however, and there was no objection to the omission of the more pointed instruction that reliance on the advice of counsel may indicate good faith. We do not think that the omission was plain error and, absent the requisite objection to preserve the point, we will not notice it. Fed.R.Crim.P. 30.

■ Finally, Biggs argues that the district court improperly highlighted one of the government's requested instructions. The district court had agreed to give a charge on acts the defendant caused to be done through a third party, but overlooked giving it in the main charge. When defense counsel noted the omission, the court recalled the jury before deliberations had begun and gave the proper instruction. This action was not reversible error. There is no *per se* rule against correcting an error in a charge, especially when, as here, the correction is made before deliberations have begun and defendant can point to no actual prejudice.

### B. Government Witness

■ Biggs offered proof in his defense that he reasonably believed the Hickman mine had great production potential, and reasonably believed his estimates of coal tonnage had a basis in fact. The government rebutted these claims with the testimony of Smith, an associate of the person who assigned Biggs the Hickman mine lease. Smith testified that he knew the interior of the mine and that the property had already been "practically mined out." Biggs claims this evidence was not relevant, and that the evidence's unduly prejudicial effect substantially outweighed its probative value in any event.

We disagree. We think the relevance of the evidence is self-evident, and we cannot say that the district court abused its discretion by weighing prejudice against probative value and deciding to admit the testimony.

No. 82–5236 Dismissed.

No. 82–5237 Affirmed.

No. 82–5256 Reversed.[4]

---

**4.** After this consolidated appeal was scheduled for oral argument, Biggs moved *pro se* to continue argument so he could engage other counsel and raise other issues. We denied the motion, but permitted Biggs to file a supplemental brief. Biggs, acting *pro se,* did file a supplemental brief which we have read and considered. It raises no new issues meriting discussion.