842 F.2d 1293
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hyman GREENBERG, Defendant-Appellant.
 No. 87-5089.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1988.
Decided March 8, 1988.
 
 Jed S. Rakoff (Brian T. Fitzpatrick; Ralph P. DeSanto; Mudge, Rose, Guthrie, Alexander & Ferdon; Charles O. Cake; Cake, Rhoades & Rideout, P.C., on brief), for appellant.
 Lawrence Joseph Leiser, Assistant United States Attorney (Henry E. Hudson, United States Attorney; Constance Frogale, Assistant United States Attorney; Sarah Moody, Third Year Law Student, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and MURNAGHAN, Circuit Judges, and JOSEPH H. YOUNG, United States District Judge for the District of Maryland, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Hyman Greenberg was convicted by a jury of conspiring to submit a false claim to the government, 18 U.S.C. Sec. 287, and to make false statements to the government, 18 U.S.C. Sec. 1001, in violation of 18 U.S.C. Sec. 371. Greenberg was also convicted of aiding the submission of a false claim to the government, in violation of 18 U.S.C. Sec. 287 and Sec. 2. Greenberg was acquitted on eight counts of submitting false statements to the government in violation of 18 U.S.C. Sec. 1001 and Sec. 2.
 
 
 2
 Greenberg raises numerous issues on appeal, principally that the evidence was insufficient properly to establish venue for the prosecution in the Eastern District of Virginia; that the court's jury charge on the scienter requirement of Sec. 287 and Sec. 1001 was improper; that the prosecution improperly vouched for the credibility of its witnesses; that the prosecution violated its disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963); that the trial judge decided an issue that should have been submitted to the jury; and that there was insufficient evidence to convict him. We believe that these and Greenberg's other contentions are without merit and therefore affirm.
 
 
 3
 * The charges arose out of a scheme involving a bid by Atlantic Hardware (Atlantic) on a contract to supply the government with medical tool kits. Atlantic is a New York hardware supply company and Greenberg was its president at all times relevant to this case. Atlantic's business included some government contract work, a part of the business run primarily by Bernard Bosch and Bruno Holst.
 
 
 4
 In the summer of 1984, the General Services Administration (GSA), Federal Supply Service Center (FSSC), issued a solicitation for bids to supply the government with a medical tool kit. The solicitation called for the kit to include a number of items, including a John Fluke Mfg. Co. # 8020B multimeter "or equal." An FSSC solicitation is actually a multipurpose document. It serves first as the government's solicitation for bids. After a company fills in the prices for the items and submits it back to the government, the document serves as a company's bid. Finally, if the bid is accepted, the document serves as the contract between the government and the successful bidder. Once a bid is awarded, a GSA inspector must approve a preproduction sample of the contract item, a process that typically requires the inspector to review test reports from the manufacturer of the various components. If approval is received, the contract items are shipped, claims for payment submitted, and paid.
 
 
 5
 In July 1984, Bosch convinced Greenberg that Atlantic should bid on the medical kit contract. Atlantic submitted a bid of $609, that included a price of $152.32 for the John Fluke multimeter. Just before bids were due, Bosch notified Greenberg that he had found a substitute multimeter that was an "equal" of the Fluke multimeter. This new Triplett multimeter cost only $63.30, which allowed Atlantic to lower its bid to $502. While Atlantic submitted its new lower bid in time, it did not notify GSA that the new bid did not include the John Fluke multimeter. Nor did it submit the extensive documentation necessary to support the designation of an "equal," allegedly due to the last-minute nature of the change.
 
 
 6
 The government accepted Atlantic's bid of $502. As Atlantic began to order the kit items, it learned that the Triplett could not properly qualify as an "equal" to the John Fluke multimeter. Bosch then located a third multimeter, this time a Sperry. Though it was alleged to be an equal, the Sperry multimeter did not have all the same features of the Fluke and, at $56.50, cost even less than the Triplett. Again, Atlantic never notified the government of either the Triplett or Sperry switch.
 
 
 7
 In late 1984, a GSA inspector visited Atlantic to inspect the preproduction samples of the tool kit. Though the exact details are somewhat unclear, Bosch apparently got the inspector to approve the Sperry multimeter as an "equal" to the Fluke. With the approval in hand, Atlantic set out to fill the contract order.
 
 
 8
 The scheme, however, began to unravel. W.S. Jenks & Sons had the rights to distribute the Fluke multimeter and was expecting an order from Atlantic as a result of its successful bid. When no order was forthcoming, Jenks contacted the inspector's superior, Carol McClaugherty, who in turn contacted Bosch. Bosch explained that the inspector had approved the Sperry as an "equal." McClaugherty informed Bosch that an inspector had no such authority and that a formal deviation request would have to be filed. One reason for this process was to allow the government to realize some or all of the difference in price when a cheaper "equal" was substituted for a contract item.
 
 
 9
 Bosch raised the issue with Greenberg, and suggested offering the government a rebate of $40, about half the difference between the price of the Fluke and the Triplett. Greenberg instead suggested a rebate of $6.50. Bosch then set out to document a price on the Sperry multimeter of $132.50 to bring it within $6.50 of a new price quote on the Fluke. Bosch forged invoices from City Electric Company in New York and had an employee there quote a price of $132.50 on the Sperry when GSA officials called to check.
 
 
 10
 On March 2, 1985, Atlantic sent 60 tool kits with Sperry multimeters to GSA for final approval and a short time later submitted its bill for these kits to GSA's office in Kansas City. GSA rejected Atlantic's deviation request, and the matter was referred to federal prosecutors. Bosch and Holst, among others, were charged for their misdeeds. They entered into a plea agreement whereby they pled guilty but were not imprisoned. Bosch and Holst provided the bulk of the testimony implicating Greenberg.
 
 
 11
 Greenberg was charged in a ten-count indictment. Count I charged him with conspiring to submit a false claim to the government and to make false statements to the government. The former involved Atlantic's seeking payment for the tool kits with Sperry multimeters which should have contained Fluke multimeters. The latter involved his alleged involvement in the submission of false test reports to the GSA inspector. Count II charged Greenberg with submitting the false claim. Counts III through X charged Greenberg with making false statements to the government, with each count representing a different test report.
 
 
 12
 Following his conviction on the counts indicated, Greenberg took this appeal.
 
 II
 
 13
 * The following facts are sufficient to establish venue in the Eastern District of Virginia: (1) the contract bid was reviewed, and the contract awarded, by the General Services Administration, FSSC in Arlington, Virginia; (2) through the submission of false test reports to a GSA inspector, Atlantic caused FSSC to issue a "Notice of Inspection," which was necessary for production on the contract to continue; (3) Atlantic shipped 60 tool kits and a Certificate of Compliance to GSA in Franconia, Virginia; and (4) the tool kits and the Certificate of Compliance had to be approved before GSA would provide the necessary authorization for payment on Atlantic's claim.
 
 B
 
 14
 Greenberg next argues that the district court's jury charge allowed the jury to convict him on less than a finding of "actual knowledge," which is the required scienter element. The district court instructed the jury that:
 
 
 15
 Knowledge of a falsehood which has been referred to both in Counts 3 through 10 and in Count 2 may be inferred--is an essential element of the government's proof where that is the subject of your inquiry. And actual knowledge must be proved. Knowledge of falsehood may be inferred from proof that the defendant deliberately closed his eyes to what would otherwise have been obvious to him or where the defendant's conduct comprises a reckless disregard for the truth with the conscious purpose to avoid hearing the truth. Whether to draw such an inference is entirely up to you, and that you may draw the inference does not relieve the government from proving actual knowledge by proof beyond a reasonable doubt.
 
 
 16
 Other courts have approved a virtually identical charge in the context of both a Sec. 287 prosecution, United States v. Cook, 586 F.2d 572 (5th Cir.1978), and a Sec. 1001 prosecution, United States v. Evans, 559 F.2d 244 (5th Cir.1977). And we approved of a similar charge in a travel fraud prosecution that required specific intent. United States v. Biggs, 761 F.2d 184 (4th Cir.1985). We believe that the charge here was adequate.
 
 C
 
 17
 Greenberg also alleges instances of prosecutorial misconduct, including improper prosecutorial vouching for witnesses and withholding of information from the defense.
 
 
 18
 A prosecutor may not normally vouch for the credibility of its witnesses. United States v. Moore, 710 F.2d 157, 159 (4th Cir.1983). As we read them, only one of the challenged comments by the prosecution seriously approaches the line of permissible comment. Even accepting that the comments were improper, however, we do not believe that reversal is warranted. Considering the record as a whole, and in light of the court's curative instructions,[1] we cannot say that Greenberg was prejudiced by the alleged misconduct. See Moore.
 
 
 19
 The prosecution violates its Brady obligation where it fails to disclose material, exculpatory or favorable evidence to the defense. Evidence is considered material, as to warrant reversal of a conviction, only if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the case would have been different. United States v. Bagley, 473 U.S. 667 (1985). Even if the information identified by Greenberg falls within the government's general Brady obligation in the sense that it was favorable or exculpatory, we do not believe that it meets this stringent test of materiality.
 
 D
 
 20
 Greenberg next contends that the question of the "materiality" of the submissions in issue, as an element of both Sec. 287[2] and Sec. 1001, should have been decided by the jury. As Greenberg concedes, however, the law in this circuit is to the contrary. The question of materiality is one of law and is to be decided by the trial court. Nilson Van & Storage Co. v. Marsh, 755 F.2d 362 (4th Cir.1985). The district court decided it against Greenberg. We find no error in its legal conclusion.
 
 E
 
 21
 Finally, Greenberg contends that there was insufficient evidence to convict him. Essentially, he challenges the credibility of the government's witnesses, particularly that of Bosch and Holst. But the scope of our review when faced with a challenge to the sufficiency of the evidence does not encompass weighing witness credibility. We ask only whether there is substantial evidence, assessing it in the light most favorable to the prosecution, to support the jury's finding of guilt. Glasser v. United States, 315 U.S. 60 (1942). Guided by this standard, we believe there is sufficient evidence to support the jury's verdict in this case.
 
 
 22
 Greenberg's defense largely centered around his challenge to the evidence of his knowledge of and involvement in the scheme. Greenberg rightly points out that much of the government's proof is circumstantial. There was evidence that Greenberg was an active, hands-on manager believed by his employees to know what was going on in his company. There was also evidence that Greenberg was not as ignorant as he claimed to be about the various procedures and requirements related to government contract work. More critically, however, is the testimony of Bosch. Bosch testified that Greenberg knew about the scheme from its inception, including the falsifying of the City Electric invoices. And when Greenberg's counsel suggested that Greenberg's conduct was consistent with his claimed ignorance of the scheme, Bosch flatly rejected this and reaffirmed his claim that Greenberg knew. Greenberg urges the unreliability of this critical testimony because of Bosch's interest as a cooperating plea bargainer, and because of its inconsistencies with other testimony given by Bosch. Bosch's credibility was properly challenged by vigorous cross-examination and nevertheless was accepted by the jury, whose function it was to assess its probative value. It clearly sufficed, if believed, to support the verdict on this critical element. Our review does not extend beyond that determination.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The court instructed the jury that counsel's arguments were not evidence, that the jury was to consider only the evidence, and that the jury was the sole judge of witness credibility
 
 
 [2]
 We do not here decide whether materiality is an element of Sec. 287 and note that some courts have recently concluded that it is not. United States v. Elkin, 731 F.2d 1005 (2d Cir.1984); United States v. Irwin, 654 F.2d 671 (10th Cir.1981). While Greenberg cites our decision in United States v. Snider, 502 F.2d 645 (4th Cir.1974), that case did not deal with Sec. 287 and only noted that other courts had read Sec. 287 to contain a materiality requirement. Id. at 652 n. 12. Even if materiality is an element of Sec. 287, the issue would also be one for the trial judge to decide as a question of law. United States v. Haynie, 568 F.2d 1091 (5th Cir.1978)