991 F.2d 806
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis L. LAWSON, Defendant-Appellant.
 Nos. 91-5189, 92-5020.
 United States Court of Appeals, Tenth Circuit.
 April 8, 1993.
As Amended on Denial of Rehearing
June 2, 1993.
 
 Before LOGAN and HOLLOWAY, Circuit Judges, and BRIMMER, District Judge.*
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 Defendant Curtis L. Lawson appeals his conviction for making a false statement to a federally-insured financial institution, in violation of 18 U.S.C. § 1014, and for providing a false social security number to a law enforcement agent, in violation of 42 U.S.C. § 408(a)(7)(B). Defendant alleges that the district court erred (1) in admitting evidence that the government had failed to timely produce, in violation of Fed.R.Crim.P. 16; (2) in finding that certain evidence was "material"; and (3) in excluding defendant's proffered expert testimony on trust law. He also argues that the evidence was insufficient to sustain his conviction.
 
 
 2
 * Defendant was an officer of Morton Comprehensive Health Systems, Inc., a corporation that operates a health clinic in Tulsa. In 1987, the corporation received approximately $30,000 from a dissolved predecessor trust and placed that money in an account for the eventual use of the Morton Foundation, a parallel corporation to be formed to facilitate public fundraising by the clinic. The bank account was opened in the name of the Morton Comprehensive Health Trust Fund, a trust that had not been and never was legally created. The Foundation was incorporated soon thereafter, although its board did not immediately take control of the funds. Rather, the money remained under the control of Rev. Oscar Chapelle, the founder of the clinic.
 
 
 3
 Chappelle periodically reported to the Morton Comprehensive Health Systems board on the status of the bank account, including the purchase of a certificate of deposit and the reinvestment of the interest it was earning. When Chappelle died in the summer of 1990, the account contained more than $35,000. In November 1990, defendant went to the bank in which the CD was held and sought to cash it out. In support of his authority to do so, he produced a "Resolution" of the nonexistent "Morton Comprehensive Health Trust." That document represented that the Board of Directors of the Morton Comprehensive Health Trust had met on September 3, 1990, that three members of the board had either resigned or were deceased, and that the board had granted defendant full control of the assets of the trust. The resolution was signed by defendant as "Secretary." The bank accepted the resolution, and issued a cashier's check to defendant for $37,440.28, thereby closing the account. Defendant used the cashier's check to purchase a different certificate of deposit at another bank, in the name "Morton Trust Fund" and with defendant as signatory.
 
 
 4
 In December, defendant sought a $34,000 loan from the bank in which he had placed the Morton Trust Fund CD. In support of his request, defendant produced a second "Resolution," also from the nonexistent Morton Comprehensive Health Trust. In that document, defendant represented that the board had met and decided to provide financial support to the "Federal Project on Aids Research." The document purported to authorize borrowing up to $34,000 for that purpose, and the pledging of the CD as collateral for the loan. The resolution purported to direct defendant to open an account at the bank with the proceeds, and to make disbursements therefrom. The resolution was signed by defendant, this time as "chairman."
 
 
 5
 The bank authorized the loan, with the CD as collateral, and issued a check for $34,000 to defendant. Defendant opened an account with the same bank, and immediately cashed two checks on the account totaling $33,000. Defendant later admitted that these funds were not used for AIDS research, but that he appropriated them to pay personal debts. Defendant eventually depleted the entire account, solely for personal use.
 
 
 6
 In the spring of 1991, when the loan came due, Morton Comprehensive Health Systems, Inc. was notified. Board members were puzzled, as they had neither authorized nor ratified any such loan. Defendant had never mentioned his actions regarding the Foundation money to the board, although he had had several opportunities to do so. Board members' confusion became anger when the bank appropriated the proceeds of the CD to pay the loan. The board sought an explanation from defendant, who then claimed that there were in fact two CD's, and that the one originally controlled by Chappelle was still in the first bank. The board passed a resolution instructing defendant to turn over all accounts and records; defendant never complied.
 
 
 7
 The board's legal counsel reported the problem to the authorities, who sent an FBI agent to investigate. In an interview, defendant provided a false social security number to the agent. Defendant also claimed that the loan money had not been disbursed to the AIDS group because it "didn't qualify," even though defendant cashed out $33,000 of the loan within minutes of obtaining it.
 
 
 8
 At trial, the government sought to offer a tape recording of a Morton Comprehensive Health Systems board meeting in March of 1991, at which defendant was asked to explain himself. Although the government had earlier introduced a tape of a different board meeting, this tape had not been provided to defendant before the government sought to introduce it. Defendant objected, and the district court gave defense counsel the opportunity to review the tape overnight before it was played for the jury. The jury convicted defendant on both counts, and this appeal followed.
 
 II
 
 9
 The government admits that its failure to provide defendant with the meeting tape was a violation of Fed.R.Crim.P. 16(a)(1)(A). The government contends, however, that the court's action in giving defense counsel an evening to review the tape, combined with the fact that defendant had previously received a copy of the minutes of that meeting, cured any resulting prejudice, and so any error was harmless.
 
 
 10
 Rule 16 provides that the prosecution must produce, upon request, "any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government." Fed.R.Crim.P. 16(a)(1)(A). However, "a discovery violation does not automatically preclude the government's use of the evidence at trial. Relief for violations of discovery rules lies within the discretion of the trial court; a defendant must show prejudice to substantial rights to warrant reversal of that discretion." United States v. Accetturo, 966 F.2d 631, 636 (11th Cir.1992) (citation omitted), cert. denied, 113 S.Ct. 1053 (1993). When considering the propriety of sanctions, a district court should take the following factors into account:
 
 
 11
 (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.
 
 
 12
 United States v. Wicker, 848 F.2d 1059, 1061 (10th Cir.1988).
 
 
 13
 In this case, the prosecution had access to the meeting tapes and should have produced all of them to defendant. However, when defendant objected to introduction of the March tape, the court recognized the need to give defense counsel time to review the tape and offer any objections. Consequently, the court refused to permit immediate introduction of the tape, giving defense counsel overnight to listen to the tape. Because defendant already had been provided with detailed minutes of the meeting, any prejudice resulting from its late disclosure was minimal. There is no evidence of bad faith on the part of the government; the failure to obtain the March tape seems to have been an oversight. The district court's decision to delay the offer of the tape one day was a proper response to the discovery violation under the circumstances, and it therefore was not an abuse of discretion to admit the tape into evidence.
 
 III
 
 14
 Defendant argues that the second "Resolution," purporting to authorize the $30,000 loan, should not have been considered because it was not material, as that term applies to violations of 18 U.S.C. § 1014. Although the statutory language of § 1014 does not explicitly require that the false statement relate to a material fact, this circuit has adopted such a requirement. See United States v. Smith, 838 F.2d 436, 439 (10th Cir.1988), cert. denied, 490 U.S. 1036 (1989). The question of materiality is one of law, to be decided by the court. United States v. Haddock, 956 F.2d 1534, 1550 (10th Cir.), cert. denied, 113 S.Ct. 88 (1992). The district court must make a preliminary determination as to the materiality of the statement before submitting the case to the jury. If it finds the statement relates to a material fact it should instruct the jury to that effect and that the issue should not be reconsidered by the jury. A material fact in this context is one having " 'a natural tendency to influence, or the capability of influencing' a decision maker." Id. (quoting United States v. Daily, 921 F.2d 994, 1003 n. 9 (10th Cir.1990)). Actual reliance by the bank need not be shown; all that is required is that the statement have "the capacity to influence the bank's decision." Id.
 
 
 15
 Defendant asserts that the testimony of the bank's loan officer demonstrates that the resolution was not required to obtain the loan, and therefore that any statements in the resolution, true or false, were not material. The officer testified that, because of the security provided by the CD, defendant was not required to fill out a loan application, and that he would have made the loan even for defendant's personal purposes. The officer admitted, however, that he would have asked additional questions if the loan had been for personal purposes. Further, the officer stated unequivocally that the bank required some form of borrowing resolution before authorizing a loan collateralized by an institutionally-owned CD. Thus, the resolution authorizing the loan was not only capable of influencing the bank's decision, it was indispensable. Defendant's misrepresentation of his authority to obtain the loan in the borrowing resolution went to a material fact, and the district court's holding to that effect was correct.
 
 IV
 
 16
 Defendant next argues that the district court erred in excluding expert testimony he offered to explain the trust law of Oklahoma. "The trial judge has broad discretion concerning the admission or exclusion of expert testimony. In reviewing this decision, we defer to the trial court and do not reverse unless there is an abuse of discretion." United States v. McDonald, 933 F.2d 1519, 1522 (10th Cir.), cert. denied, 112 S.Ct. 270 (1991).
 
 
 17
 In its case-in-chief, the government presented the testimony of the counsel to Morton Comprehensive Health Systems, Inc., who stated that defendant had no authority to pledge the CD as collateral, in part because there was no such entity as the "Morton Comprehensive Health Trust." Over defendant's objection, the court permitted this testimony both because the witness was testifying as a fact witness, not an expert, and because the circumstances preceding and following defendant's submission of the "Resolution" were important to aid the jury's understanding of the issues. Defendant then sought to offer the expert testimony of a trust lawyer, who would have testified as to the authority of trustees under Oklahoma law. The court disallowed such testimony, finding that it would only confuse the jury and did not relate to the issue of defendant's false statements in the "Resolution."
 
 
 18
 "Expert testimony is admissible only when the expert's specialized knowledge will help the jury understand the evidence or determine a fact in issue." United States v. Nunn, 940 F.2d 1148, 1149 (8th Cir.), cert. denied, 112 S.Ct. 609 (1991). The issue for the jury was not the application of Oklahoma trust law, but whether the "Resolution" contained false statements submitted by the defendant. The expert witness could not have testified as to whether a board of directors of the trust ever met, or even existed, or whether that board authorized defendant to secure the loan. Given the nature of the proposed testimony and the potential for confusion of the jury, the district court did not abuse its discretion by excluding the expert testimony.
 
 V
 
 19
 Finally, defendant challenges the sufficiency of the evidence supporting his convictions. When challenged for sufficiency, the evidence is considered in the light most favorable to the government, along with any reasonable inferences that may be drawn from the evidence. United States v. Robinson, 978 F.2d 1554, 1567 (10th Cir.1992). Further "[a] criminal conviction may be sustained on circumstantial evidence as well as inferences drawn therefrom, considered in the aggregate." Id. Applying these standards, if any rational jury could have found the defendant guilty beyond a reasonable doubt, the conviction must be upheld. Id.
 
 
 20
 To convict a defendant of violating 18 U.S.C. § 1014, the government must prove: "1) that defendant made a false statement to a bank; 2) that he or she did so for the purpose of influencing the bank's action; 3) that the statement was false as to a material fact; and 4) that the defendant made the false statement knowingly." Haddock, 956 F.2d at 1549. The statement here was the second "Resolution" purporting to authorize the loan and the pledging of the CD as collateral. The government's evidence amply demonstrated that the document was wholly false. No "Morton Comprehensive Health Trust" existed; it never had a board of directors; there never was a board meeting; there never was authorization of the $30,000 loan secured by the institutional CD.
 
 
 21
 That the document was offered to influence the bank's action is also clear. "For purposes of 18 U.S.C. § 1014 the bank's 'action' could be the granting of a loan or the disbursement of loan funds." Smith, 838 F.2d at 440. Defendant knew that he could not obtain the bank loan without collateral, and also that the only way to pledge the institutional CD as collateral would be through a resolution seeming to grant him that authority. The evidence that the statement was offered raises an inference, upon which a reasonable jury could rely, that defendant intended it to influence the loan decision. As previously discussed, the government also proved the materiality element of the offense. The fourth requirement, that the statement be made knowingly, can be inferred from the circumstances surrounding its making. Because there was no board of directors of the "Morton Comprehensive Health Trust," the board could not have met and granted defendant the authority to obtain the loan. Defendant therefore must have known that the representations made in the "Resolution" were false when he made them.
 
 
 22
 Defendant's brief does not explicitly challenge the sufficiency of the evidence supporting his conviction for providing a false social security number. It only references that in denying defendant's motion for acquittal "the Court incorrectly found that Lawson was found guilty of using a social security [sic] on a loan application.... The evidence ... clearly showed that Lawson never filled out a loan application nor did he provide an incorrect social security number to any financial institution." Appellant's Brief at 14-15. The indictment did not charge defendant with giving a false social security number to a financial institution, but that he used a false social security number to identify himself to an FBI agent with intent to deceive. The government's evidence on that count was sufficient.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3